IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ASSERTION OF PROFESSIONAL BALL PLAYERS OF AMERICA<br>*Plaintiff,*<br><br>v.<br><br>JENNIFER S. MADISON AND NATE MILLER AND DOES 1 – 25<br>*Defendants.* | CIVIL ACTION NO. 4:23-cv-01037-O<br><br>JURY TRIAL DEMANDED |

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE OF THIS COURT:**

NOW COMES Plaintiff Association of Professional Ball Players of America (the "Association"), which files this *Application for Temporary Restraining Order and Preliminary and Permanent Injunction and Brief in Support* (the "Application") against Defendants Jennifer S. Madison and Nate Miller and would respectfully show the Court as follows:

**I.
APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTIONS**

1.    The Association requests a Temporary Restraining Order and, upon notice and a hearing, the entry of preliminary and permanent injunctions enjoining Defendants from unlawfully purporting to act as authorized agents of the Association, including engaging in fundraising activities that do not benefit the Association and causing confusion related to the true officers and directors of the Association, when in reality they are not so authorized.  For the reasons set forth below, the Association is substantially likely to prevail on its claims against Defendants; the Association is likely to suffer irreparable harm absent the requested injunctive relief, and in fact has already begun to suffer same; the threatened injury to the Association far outweighs the

potential harm the requested injunctive relief would cause to Defendants because the only "harm" to Defendants would be restraining them from activities which they already lack legal authority to conduct; and the Association's requested injunctive relief will not disserve the public interest because it will ensure that members of the public unwitting third parties are not deceived by Defendants' unlawful actions. Finally, the evidence attached to this Application demonstrates Defendant Jennifer Madison's recently raised claim—that she, Defendant Nate Miller, or others who are not bringing this lawsuit are the true authorized representatives of the Association—to be baseless.

## II.

## BRIEF IN SUPPORT—TABLE OF CONTENTS

III. BRIEF IN SUPPORT—TABLE OF AUTHORITIES ................................................................ 3

IV. BRIEF IN SUPPORT—BACKGROUND FACTS .................................................................. 3

V. BRIEF IN SUPPORT—STANDARDS FOR INJUNCTIVE RELIEF ..................................... 5

VI. BRIEF IN SUPPORT—ARGUMENT & AUTHORITIES ....................................................... 5

    A.    There is a substantial likelihood that the Association will prevail on the merits of its claims. ................................................................................................... 5

        1.  *Federal Trademark Infringement* ............................................................................ 5

        2.  *Common-Law Trademark Infringement* ................................................................ 7

        3.  *Violation of the Texas Anti-Dilution Statute; Injury to Business Reputation* ............................................................................................................... 7

        4.  *False Designation of Origin* ................................................................................... 8

        5.  *Common Law Unfair Competition* ....................................................................... 10

    B.    The Association is likely to suffer irreparable harm in the absence of preliminary injunctive relief. ................................................................................ 10

    C.    The threatened injury to the Association outweighs the potential injury posed by the injunction to Defendants. ................................................................ 11

    D.    Granting the preliminary injunction will not disserve the public interest. ............ 11

E. The arguments raised in Defendant Jennifer Madison's Answer are baseless and should not deter this Court from granting the relief requested herein. .............. 12

## III.

## BRIEF IN SUPPORT—TABLE OF AUTHORITIES

Page(s)

Cases

*1st Nat. Reserve, L.C. v. Vaughan*,
   931 F. Supp. 463 (E.D. Tex. May 20, 1996) ................................................................ 9
*Am. Rice, Inc. v. Producers Rice Mill, Inc.*,
   518 F.3d 321 (5th Cir. 2008) ....................................................................................... 6
*Amazing Spaces, Inc. v. Metro Mini Storage*,
   608 F.3d 225 (5th Cir. 2010) ..................................................................................... 10
*Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*,
   778 F. Supp. 2d 726 (N.D. Tex. Mar. 31, 2011) ......................................................... 8
*Janvey v. Alguire*,
   647 F.3d 585 (5th Cir. 2011) ..................................................................................... 10
*MetroPCS v. Mohammed*,
   2017 WL 2590108 (N.D. Tex. Apr. 24, 2017) ............................................................ 6
*Paulsson Geophysical Servs. v. Sigmar*,
   529 F.3d 303 (5th Cir. 2008) ..................................................................................... 10
*Six Nations, Ltd. v. Pryor*,
   481 F.3d 60 (2d Cir. 2007) ........................................................................................ 10
*Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*,
   851 F.3d 440 (5th Cir. 2017) ....................................................................................... 7
*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .......................................................................................... 5, 10, 11

Statutes

15 U.S.C. § 1125(a)(1)(A) ................................................................................................ 8
Tex. Bus. & Com. Code § 16.103(b) ............................................................................ 7, 8

## IV.

## BRIEF IN SUPPORT—BACKGROUND FACTS

2. The Association is a nonprofit organization that was formed in 1924 to assist current and former professional baseball players, coaches, umpires, scouts, and trainers who face challenging circumstances and need financial and other assistance. As of the date of filing, the Association's membership has reached six digits and continues to expand. The Association

operates nationally, with members all over the United States and multiple chapters around the country to support its members in every state. One of those chapters is located in the Northern District of Texas. The Association maintains ongoing, national efforts to raise funds through national efforts, including in the State of Texas and the Northern District of Texas, to support the Association and its members who have fallen on hard times. Through its century of diligence and substantial investments of time and money to support former professional baseball players and other members of the professional baseball community throughout the United States, the Association has cultivated a tremendous degree of goodwill.

3. Since its inception, the Association has owned and maintained two federally registered trademarks: "Association of Professional Ball Players of America" (the "426 Trademark") and the Association's logo (the "795 Trademark"). Both trademarks are, and have always been, valuable assets of the Association, as is the goodwill associated with them. The Association continues to use these trademarks in commerce and owns various domain names which incorporate these trademarks, including https://apbpa.org. Further, both trademarks are highly distinctive under applicable law, and their ownership and affiliation have never been questioned—at least, until the recent conduct of the defendants herein.

4. Recently, Defendants Jennifer Madison and Nate Miller (together referred to as "Defendants") have been unauthorizedly using the Association's trademarks on their Facebook and other social media pages in efforts to solicit funds from unwitting members of the public. In doing so, Defendants have been making fraudulent misrepresentations that they are the legal executives of the Association and have authority to engage in fundraising activities on behalf of the Association. Defendants have no affiliation with the Association, however, and all funds raised by Defendants appear to be going directly into Defendants' own pocketbooks. In this manner,

Defendants have utilized the Association's trademarks to conduct transactions with individuals residing in Texas, mislead residents of Texas regarding Defendants' status and authority with the Association, confuse the public to the Association's detriment, and damage the Association's hard-earned goodwill.

## V.

### BRIEF IN SUPPORT—STANDARDS FOR INJUNCTIVE RELIEF

5. In order to prevail on a motion for preliminary injunction, the plaintiff must show: (1) it has a substantial likelihood of prevailing on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the threatened injury to the plaintiff outweighs the potential injury posed by the injunction to the defendant; and (4) granting the preliminary injunction will not disserve the public interest.[1] As explained in further detail below, the Association has presented evidence showing that each of these factors supports the entry of the requested preliminary injunctive relief.

## VI.

### BRIEF IN SUPPORT—ARGUMENT & AUTHORITIES

**A. There is a substantial likelihood that the Association will prevail on the merits of its claims.**

6. Defendants' actions with regard to the Association's trademarks evidence a strong likelihood that the Association will prevail on its causes of action herein.

*1. Federal Trademark Infringement*

7. "To establish a cause of action for trademark infringement, Plaintiff must show (1) it has a legally protectable mark; and (2) Defendants' use of that mark creates a 'likelihood of

---

[1] *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY**
**AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT**
511305.20                                                                                                                                          Page **5** of 14

confusion.'"[2]  Regarding the first element, the Association has federally registered the 426 Trademark and the 795 Trademark.[3]  Additionally, the 426 Trademark and the 795 Trademarks are highly distinctive; the Association has been in existence for nearly a century, has over 100,000 total members, and is a nationally known organization.[4]

8.  Regarding the second element, Defendants' conduct as described above is likely to cause confusion to the public.  Each Defendant has adopted and used the Association's trademarks in the course of their efforts to defame true members of the Association and deceive the public into donating to Defendants under the mistaken belief that they are donating to the Association.[5]  In fact, Defendants' actions have already confused Texas residents about, among other issues, who possesses legal authority to act on behalf of the Association and who may use its trademarks.  This is evidenced by the many Association members who have reached out with concern and confusion regarding Defendants' posts.[6]  These unauthorized activities by Defendants produced substantial revenue that, upon information and belief, was used exclusively for Defendants' individual benefit.[7]  Further, they are obstructing the Association's efforts to finalize the plans for its 100-year anniversary celebrations, as baseball players, Association members, and others are left uncertain regarding Association leadership.[8]  Defendants have no authority to act on behalf of the Association, and any goals they might have differ materially from the aims of the Association.[9]

---

[2] *See MetroPCS v. Mohammed*, 2017 WL 2590108, at *5 (N.D. Tex. Apr. 24, 2017) (citing *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).
[3] *See* Exhibit "A" at p. 1; *see also* Exhibits "A-1" and "A-2."
[4] *See* Exhibit "A" at p. 1.
[5] *See generally* Exhibits "A-3" and "A-4."
[6] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3" and "A-4."
[7] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3" and "A-4"; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.  The Association hereby requests that the Court take judicial notice of its file for purposes of determining this Application.
[8] *See* Exhibit "A" at p. 2.
[9] *See id.* at p. 2; *see also* Exhibits "A-3" and "A-4"; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.

Notwithstanding same, Defendants continue to perpetrate their unauthorized activities up to the time of filing this Application.[10]

### 2. Common-Law Trademark Infringement

9. "The analysis of common-law trademark infringement under Texas law is the same as that of federal trademark infringement under the Lanham Act."[11] Therefore, the Association is highly likely to succeed on this claim for the reasons set forth in Section VII.A.1., above. To the extent necessary to address, given the longstanding existence of the Association, there can be no doubt that the Association is the senior user of the 426 Trademark and 795 Trademark.

### 3. Violation of the Texas Anti-Dilution Statute; Injury to Business Reputation

10. The Texas Anti-Dilution Statute, codified in § 16.103 of the Texas Business & Commerce Code, provides in part as follows:

> (a) Subject to the principles of equity, the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

As set forth previously and shown by the attached evidence, the 426 Trademark and 795 Trademark are highly distinctive and federally registered trademarks that have been in regular use in Texas and nationwide for many years.[12] The nonexclusive list of factors set forth in the statute to determine whether a mark is famous includes the following:

> (1) the duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party;
> (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state;
> (3) the extent of actual recognition of the mark in this state; and

---

[10] *See generally* Exhibit "A-10."
[11] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).
[12] *See* Exhibit "A" at p. 1; *see also* Exhibits "A-1" and "A-2."

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY**
**AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT**
511305.20                                                                                                                              Page 7 of 14

      (4) whether the mark is registered in this state or in the United States Patent and Trademark Office.[13]

Because the Association has regularly used the 426 Trademark and the 795 Trademark in commerce in its various chapters throughout the state of Texas for over a century, the Association's membership is over 100,000 strong with a vibrant community in Texas, and both trademarks are federally registered with the USPTO (and have been since the Association's inception), the analysis of whether these trademarks are famous tilts strongly in the Association's favor.

    11.    Further, the actual dilution that has already occurred conclusively proves that Defendants' actions create a substantial likelihood of dilution. "Dilution by blurring . . . occurs only when the plaintiff's trade name is used by another as his own trade name, thereby weakening the plaintiff's ability to use the name as a unique identifier."[14] Defendants, falsely operating under the guise of the Association, have already secured donations and social media attention from numerous third parties, who presumably believed they were contributing to the Association instead of Defendants' bank accounts.[15] This obviously weakens the Association's ability to use its own name as a unique identifier for itself, and Defendants have no justification for their actions. As a result, the Association has suffered injury to its business reputation as a result of Defendants' conduct and will continue to do so if they are not enjoined therefrom.[16]

    4.  *False Designation of Origin*

    12.    15 U.S.C. § 1125(a)(1)(A) provides in relevant part as follows:

> Any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin . . . which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive

---

[13] *See* Tex. Bus. & Com. Code § 16.103(b).
[14] *See Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 745 (N.D. Tex. Mar. 31, 2011).
[15] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3" and "A-4"; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.
[16] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3," "A-4," and "A-10"; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT**
511305.20                    Page **8** of 14

> as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her . . . services[] or commercial activities by another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Stemming from this statute, the elements of a false designation of origin claim are as follows: "first, the defendant used in connection with trade a false designation of origin or false description or representation; second, the defendant caused such . . . services to enter into commerce; and third, that the plaintiff is a person who believes that he or she is likely to be damaged as a result."[17]

13. As analysis of the previous causes of action has already demonstrated, Defendants have falsely represented to others that their commercial fundraising activities and social media posts are authorized activities on behalf of the Association.[18] In reality, they are anything but.[19] Similarly, Defendants' actions have already been documented as causing actual confusion among the public regarding their affiliation with the Association; third parties have donated to them thinking that they are, when in fact they are not, and various Association members have reached out to the Association regarding confusion and concerns caused by Defendants' posts.[20] The Association's efforts to plan its upcoming 100-year anniversary commemorative events are also being obstructed by Defendants' actions.[21] Therefore, they are certain, not just likely, to cause confusion, mistake, and deception. Finally, the Association has already begun to face irreparable harm as a result of Defendants' actions and will continue to do so if Defendants are not enjoined.[22]

---

[17] *See 1st Nat. Reserve, L.C. v. Vaughan*, 931 F. Supp. 463, 466 n. 4 (E.D. Tex. May 20, 1996).
[18] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3" and "A-4."
[19] *See* Exhibit "A" at p. 2.
[20] *See id.* at p. 2; *see also* Exhibits "A-3" and "A-4"; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.
[21] *See* Exhibit "A" at p. 2.
[22] *See id.* at p. 2; *see also* Exhibit "A-10."

  5. *Common Law Unfair Competition*

14. "A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'"[23] Therefore, the Association is highly likely to succeed on this claim for the reasons set forth in Section VII.A.1., above.

**B. The Association is likely to suffer irreparable harm in the absence of preliminary injunctive relief.**

15. To show irreparable harm, the injury must be actual and imminent.[24] A plaintiff seeking preliminary relief must demonstrate that the irreparable injury is likely in the absence of an injunction.[25] A harm is irreparable where there is no adequate remedy at law, such as monetary damages.[26] This test is easily met in the present case. Absent enjoinment of Defendants from continuing to falsely hold themselves out as authorized agents of the Association, the Association will suffer permanent damage to its national goodwill, reputation, and prestige, for which no amount of money could adequately compensate it or even be calculated as compensation.[27] While a split exists among the federal circuits concerning whether proving a likelihood of confusion permits a presumption of irreparable injury,[28] the threat to the Association is clear, real, and not just imminent but already in progress.[29] Members of the Association have already begun reaching out in significant numbers to the Association regarding whether Defendants' statements are true, and the Association's plans for its 100-year anniversary events are being impeded.[30] Therefore,

---

[23] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235 n. 7 (5th Cir. 2010).
[24] *Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).
[25] *Winter*, 555 U.S. at 22.
[26] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).
[27] *See* Exhibit "A" at p. 2.
[28] *See Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008) (listing cases and analyzing recent U.S. Supreme Court precedent).
[29] *See* Exhibit "A" at p. 2; *see also* the Association's *Complaint for Trademark Infringement* at pp. 4, 5.
[30] *See* Exhibit "A" at p. 2; *see also* Exhibits "A-3" and "A-4."

no legal presumption is necessary for the Court to conclude that this factor weighs in favor of the Association.

    **C. The threatened injury to the Association outweighs the potential injury posed by the injunction to Defendants.**

    16.    After a showing of likelihood of success on the merits and substantial threat of irreparable harm, courts must consider whether the balance of equities favors the plaintiff as well as any public consequences of granting or denying the preliminary injunction.[31]  In this litigation, the balancing of equities between the Association and Defendants tilts entirely to the Association's ledger.  The only "harm" that Defendants could face from the granting of injunctive relief to the Association is that they will no longer be able to misappropriate third parties' money under the false pretense that they are acting on the Association's behalf.  Contrastingly, the Association faces irreparable harm to its nationwide reputation and goodwill as a result of Defendants' conduct.[32]  Further, Defendants' actions undercut the truly authorized representatives of the Association and threaten to spread dissidence among its ranks.[33]

    **D. Granting the preliminary injunction will not disserve the public interest.**

    17.    The granting of injunctive relief against the Enjoined Defendants will in no way disserve the public interest.  By protecting unwitting third parties from donating to Defendants when they think they are donating to the Association, and further by preventing the confusion and disillusionment attendant to same, it will do precisely the opposite.  Defendants' actions are in no way beneficial to the public interest, and an injunction against them will exclusively benefit the public just as it will the Association.

---

[31] *Winter*, 555 U.S. at 23–24.
[32] *See* Exhibit "A" at p. 2.
[33] *See id.* at p. 2; *see also* Defendant Jennifer Madison's *The Defendant's Answer to the Complaint*, ECF No. 8, at pp. 1, 2, 4.

**APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY
AND PERMANENT INJUNCTION AND BRIEF IN SUPPORT**
511305.20      Page **11** of 14

## E. The arguments raised in Defendant Jennifer Madison's Answer are baseless and should not deter this Court from granting the relief requested herein.

18. Finally, the Association finds it necessary to briefly address Defendant Jennifer Madison's assertion in her *Answer to the Complaint*: that the current, lawful directors and officers of the Association are not authorized to act on its behalf.[34] Contrary to Madison's claim, Kameron Loe is the current President of the Association and has been such since the beginning of 2022.[35] The Association's Bylaws require that any candidate for the office of Association President be voted on by either the Association's constituency or its Board of Directors, depending on the applicable circumstances.[36] In compliance with the Bylaws, Loe was voted into office as President on December 30, 2021.[37] The Association's 2021 annual report, filed with the Arizona Secretary of State, names Loe as the Association's President.[38] For this reason, Madison's claim that Loe was banned from the Association in 2020 is obviously baseless.[39]

19. Further undercutting Madison's contentions, the Association's Board of Directors met on at least two other occasions to address unauthorized and fraudulent activities by Madison under the guise of the Association (which are separate activities from those complained of in this case).[40] The Association also determined that Madison holding the office of President had potential to violate applicable state and federal law.[41] It is clear from the Association's official meeting minutes and records that Loe, not Madison and Miller, is authorized to act on behalf of the Association, and therefore Madison has failed to state a basis for the Court to deny the relief requested by the Association herein.

---

[34] *See* Defendant Jennifer Madison's *The Defendant's Answer to the Complaint*, ECF No. 8, at pp. 1, 2, 4, 5, 8.
[35] *See* Exhibits "A-7" and "A-8."
[36] *See* Exhibit "A-9" at pp. 8 (Article VI, Section 3), 11 (Article X).
[37] *See* Exhibit "A-7."
[38] *See* Exhibit "A-8."
[39] *See* Defendant Jennifer Madison's *The Defendant's Answer to the Complaint*, ECF No. 8, at pp. 11–12.
[40] *See* Exhibits "A-5" and "A-6."
[41] *See* Exhibit "A-6."

## VII.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** the Association respectfully requests that the Court grant the relief requested in this Application and award the Association receive such other and further relief to which it may show itself justly entitled, whether at law or in equity.

Respectfully submitted,

*/s/ Graigory B. Fancher*
Graigory B. Fancher
State Bar No. 24052016
gfancher@bwwlaw.com
Austin L. Caldera
State Bar No. 24105284
acaldera@bwwlaw.com
Bourland, Wall & Wenzel, P.C.
301 Commerce Street, Suite 2500
Fort Worth, Texas 76102-4125
Telephone: (817) 877-1088
Facsimile: (817) 877-1636
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

I hereby certify that, on December 7, 2023, I conferred with pro se Defendant Jennifer Madison regarding the merits of and relief sought in this Application. Defendant Madison is opposed to the relief sought. No other Defendant has made an appearance in this case. Therefore, the Association requests a hearing on this Application.

*/s/ Graigory B. Fancher*
Graigory B. Fancher

## CERTIFICATE OF SERVICE

      I hereby certify that, on December 8, 2023, a true and correct copy of the foregoing document was filed with the Clerk of Court and served on all counsel of record via the Court's CM/ECF system.

                                    */s/ Graigory B. Fancher*
                                    Graigory B. Fancher