UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ASSOCIATION OF PROFESSIONAL BALL PLAYERS OF AMERICA, § § § **Plaintiff,** § § v. § § JENNIFER S. MADISON, NATE § MILLER, and DOES 1-25, § § **Defendants.** § | Civil Action No. 4:23-cv-01037-O |

## MEMORANDUM OPINION & ORDER

Before the Court are Plaintiff's Motion for Temporary Restraining Order and Preliminary and Permanent Injunction (ECF No. 9), filed December 8, 2023; Plaintiff's Appendix in Support of the Motion (ECF No. 10), filed December 8, 2023; Defendants' Response in Opposition to the Motion (ECF No. 24), filed December 19, 2023; and Plaintiff's Reply in Support of the Motion (ECF No. 25), filed December 21, 2023. For the reasons set forth herein, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction against Defendants.

**I. BACKGROUND**[1]

The Association of Professional Ball Players of America ("Plaintiff" or the "APBPA") is a non-profit organization assembled in 1924 to provide assistance to current and former professional baseball players, coaches, umpires, scouts, and trainers undergoing challenging circumstances and financial distress. Plaintiff operates nationwide with membership recently surpassing six digits and continuing to grow. Plaintiff has members spanning across the entire United States and multiple chapters throughout the country to support its membership in every

---

[1] Unless otherwise noted, the facts presented herein are taken from the parties' pleadings. *See* Pl.'s Compl., ECF No. 1; Pl.'s Mot. for TRO, ECF No. 9; Defs.' Resp., ECF No. 24; Pl.'s Reply, ECF No. 25.

1

state. Plaintiff maintains ongoing, nationwide efforts to raise funds in support of members who have fallen on hard times. From nearly a full century of its industry and substantial investments into the support of members of the professional baseball community, Plaintiff has courted a significant degree of public goodwill on a national scale.

Plaintiff has owned and maintained two federally registered trademarks—the "Association of Professional Ball Players of America" name and logo (the "APBPA Trademarks"). The APBPA Trademarks are—and have always been—valuable assets to Plaintiff. The same is true for the public goodwill associated with the APBPA Trademarks. Plaintiff continues to utilize the APBPA Trademarks in commerce to pursue its foundational mission, while also continuing to own various domain names incorporating the APBPA Trademarks. *E.g.*, Association of Professional Ball Players of America, https://apbpa.org/ (last visited January 8, 2024). Moreover, the ownership and affiliation of the APBPA Trademarks have never been called into question prior to the underlying events giving rise to this lawsuit.

Recently, Jennifer S. Madison and Nate Miller ("Defendants") have been using the APBPA Trademarks on their Facebook accounts and other social media pages to solicit funds— without APBPA authorization yet under the guise of official donations to APBPA—from unwitting members of the public. In so doing, Plaintiff alleges Defendants are fraudulently misrepresenting to members of the public that they are the legal executives of the APBPA with authority to engage in official fundraising activities. Defendants have no affiliation with Plaintiff. Nevertheless, it appears that the funds raised by Defendants in the course of their conduct have been directed toward personal benefit. In this respect, Defendants have utilized and promoted the APBPA Trademarks in order to (1) conduct transactions with members of the public residing in Texas, (2) mislead residents of Texas regarding Defendants' status and authority in relation to

Plaintiff's organization, (3) confuse members of the public and interested stakeholders to the detriment of Plaintiff, and (4) inflict damage on Plaintiff's widespread public goodwill.

In response, Plaintiff filed this lawsuit against Defendants for, *inter alia*, trademark infringement on October 12, 2023.[2] Defendants have both appeared in this case after being properly served with process.[3] On December 8, 2023, Plaintiff filed this present Motion for Temporary Restraining Order and Preliminary and Permanent Injunction.[4] Following completion of the parties' briefing, the Motion is now ripe for the Court's review.

## II.  LEGAL STANDARD

The same standard governs the issuance of a temporary restraining order and that of a preliminary injunction. *See Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (O'Connor, J.). Neither form of injunctive relief should be granted unless the movant demonstrates, by a clear showing: "(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable harm if the injunction is not granted; (3) that the threatened injury outweighs any harm that may result from the injunction to the nonmovant; and (4) that the injunction will not undermine public interests." *Roho, Inc. v. Marquis*, 902 F.2d 356, 358 (5th Cir. 1990).

## III.  ANALYSIS

Plaintiff challenges Defendants' use and promotion of the APBPA Trademarks in connection with various business activities, contending that such unauthorized use of the name and logo marks: (1) infringes upon Plaintiff's federally registered trademarks in interstate

---

[2] Pl.'s Compl., ECF No. 1.
[3] Defendant Jennifer S. Madison was served on October 13, 2023. ECF No. 6. Defendant Nate Miller was served on December 12, 2024. ECF No. 17,
[4] Pl.'s Mot. for TRO, ECF No. 9.

commerce;[5] (2) infringes upon Plaintiff's rights to its trademarks and trade name under Texas common law;[6] (3) blurs and tarnishes Plaintiff's trademarks in violation of the Texas Anti-Dilution Statute;[7] (4) constitutes false designation of origin in violation of 15 U.S.C. § 1125(a);[8] (5) injures Plaintiff's business reputation and dilutes Plaintiff's proprietary trademarks in violation of Texas Business & Commerce Code § 16.29;[9] and (6) constitutes a form of unfair competition prohibited under Texas common law.[10]

At this preliminary stage, Plaintiff prays for temporary injunctive relief from its claims against Defendants pursuant to Texas common law, 15 U.S.C. § 1116, and Texas Business & Commerce Code § 16.29.[11] Having reviewed the parties' briefing, evidence, and applicable law, the Court determines that Plaintiff has successfully established entitlement to the prayed injunction against Defendants.

### A. Substantial Likelihood of Prevailing on the Merits

The first and foremost factor in the preliminary injunction inquiry requires a showing that Plaintiff is substantially likely to prevail on the merits of at least one of its claims. *Marquis*, 902 F.2d at 358, 361. The Court finds that Plaintiff has established a substantial likelihood of prevailing on its second claim—namely, that Defendants' actions infringe upon the Texas common law rights of Plaintiff to the APBPA trademarks. As such, the Court need not address the prospective merits of Plaintiff's remaining claims at this stage.

***Legal Standard.*** "The elements of common law trademark infringement under Texas law are the same as those under the Lanham Act." *Streamline Prod. Sys., Inc. v. Streamline Mfg.,*

---

[5] Pl.'s Compl. ¶¶ 17–21, ECF No. 1.
[6] *Id.* ¶¶ 22–24.
[7] *Id.* ¶¶ 25–28.
[8] *Id.* ¶¶ 29–30.
[9] *Id.* ¶¶ 31–32.
[10] *Id.* ¶ 33.
[11] *Id.* ¶¶ 34–35.

*Inc.*, 851 F.3d 440, 450 (5th Cir. 2017) (citing *Hot-Hed, Inc. v. Safehouse Habitats (Scotland), Ltd.*, 333 S.W.3d 719, 730 (Tex. App.—Houston [1st Dist.] 2010, pet. denied)). Two elements must be satisfied in order to succeed on a trademark infringement claim: (1) the plaintiff "possesses a legally protectable trademark" and (2) the defendants' "use of this trademark 'creates a likelihood of confusion as to source, affiliation, or sponsorship.'" *Id.* (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)).

"To be legally protectable [under the first element], a mark must be distinctive in one of two ways": (1) inherent distinctiveness or (2) acquired distinctiveness. *Nola Spice Designs*, 783 F.3d at 537 (cleaned up). The registration of marks with the United States Patent and Trademark Office ("USPTO") is "prima facie evidence that the marks are inherently distinctive." *Id.* (citations omitted). But the presumption of legal validity accorded to a federally registered trademark may be rebutted by a contrary showing "that the mark is not inherently distinctive." *Streamline*, 851 F.3d at 451 (cleaned up).

Under the second element, the likelihood of confusion as to the source, affiliation, or sponsorship of a legally protectable trademark must be "more than a mere possibility of confusion; rather, the plaintiff must demonstrate a probability of confusion" spawned by the defendants' use. *Id.* at 453 (cleaned up). Courts examine the following non-exhaustive and equally weighted digits of confusion to evaluate whether a probability of such has been established: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

*Analysis.* Plaintiff successfully establishes both elements of trademark infringement. With respect to the first element, Plaintiff registered both of the APBPA Trademarks with the USPTO.[12] This is "prima facie evidence that [Plaintiff's] marks are inherently distinctive" and therefore legally protectable. *Nola Spice Designs*, 783 F.3d at 537. Moreover, Defendants offer nothing to rebut the presumptive distinctiveness of the APBPA Trademarks, which clearly identify Plaintiff's nationwide association that has been in existence for nearly a century and contains more 100,000 members.[13]

With respect to the second element, Defendants' use of the APBPA Trademarks has likely induced *more* than the requisite "probability of confusion" among the public as to the "source, affiliation, and sponsorship" of the marks. *Streamline*, 851 F.3d at 453 (cleaned up). Based on the current record, Defendants have adopted and used the APBPA Trademarks in an apparent effort to smear Plaintiff's actual members and deceive the public into donating to Defendants under the false pretense that such donations are going to Plaintiff.[14] Through their actions, Defendants have already confused various members of the public about who possesses lawful authority to act on behalf of Plaintiff and use the APBPA Trademarks. For example, many of Plaintiff's members have reached out with concern and confusion regarding Defendants' posts.[15] And Defendants' actions are currently obstructing Plaintiff's efforts to finalize plans for its 100-year anniversary celebrations because baseball players, actual APBPA members, and others are uncertain as to the true leadership authority.[16] Defendants persist in their unauthorized use and promotion of the APBPA Trademarks as of the time of filing the instant Motion.[17]

---

[12] Pl.'s App'x Exs. A, A-1, A-2, ECF No. 10.
[13] Pl.'s Mot. for TRO 6, ECF No. 9; Pl.'s App'x Ex. A, ECF No. 10.
[14] *See* Pl.'s App'x Exs. A-3, A-4, ECF No. 10.
[15] Pl.'s App'x Exs. A, A-3, A-4, ECF No. 10.
[16] Pl.'s App'x Ex. A, ECF No. 10.
[17] *See* Pl.'s Appx. Ex. A-10, ECF No. 10.

At this preliminary posture, then, Plaintiff is substantially likely to prevail on its claim of trademark infringement under Texas common law. *See Streamline*, 851 F.3d at 450.

### B.  Substantial Threat of Irreparable Harm

The second preliminary injunction factor requires Plaintiff to demonstrate that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). An anticipated harm must be imminent and not speculative in order to pose a substantial threat. *Greer's Ranch Café*, 540 F. Supp. 3d at 651. And harm is considered irreparable *per se* "where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011). Plaintiff's briefing and evidence proffered into the record demonstrate as much, while Defendants make no effort to present any serious refutation. Therefore, the Court finds Plaintiff to be substantially threatened with irreparable harm absent intervening injunctive relief.

### C.  Balance of Equities

The third preliminary injunction factor requires Plaintiff to demonstrate that its threatened injury outweighs any harm Defendants might suffer as a result of an injunction. *See Marquis*, 902 F.2d at 358. Weighing the competing harms here, an injunction would merely deprive Defendants of their ability to misappropriate third-party funds under the false pretense that they act on Plaintiff's behalf. Even assuming Defendants have raised a cognizable harm in this respect, the Court finds that the threatened irreparable harm to Plaintiff's nationwide reputation and goodwill, authority and leadership structure, and basic functionality as an organization dramatically outweigh any harm Defendants may suffer. As such, this factor similarly counsels in favor of granting an injunction.

**D. Public Interest**

The fourth and final preliminary injunction factor requires a showing that a grant of the prayed injunction "will not disserve the public interest." *Janvey*, 647 F.3d at 595 (cleaned up). Far from doing a disservice, the Court finds that enjoining Defendants' use of the APBPA Trademarks would actually *serve* the public interest in several significant respects. For instance, the requested injunction would prevent the public from making fraudulent donations. Injunctive relief would also provide the public with clarity as to who is legally authorized to act on behalf of a prominent nationwide association. And, most fundamentally, the injunction would protect publicly registered trademarks. In light of these interests, the Court concludes that the public interest factor weighs heavily in favor of issuing the prayed injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 9). Defendants Jennifer S. Madison and Nate Miller each received notice and an opportunity to brief this matter. Accordingly, it is **ORDERED** pursuant to Federal Rule of Civil Procedure 65(a) that Defendants Jennifer S. Madison and Nate Miller, and each and all of their respective agents, employees, and attorneys, together with all persons and entities in active concert or participation with either of them, are hereby **ENJOINED** from engaging directly or indirectly in the following actions:

1. Representing in any manner and at any place, including on social media websites such as, but not limited to, Facebook, that they are authorized representatives of the Association of Professional Ball Players of America;

2. Representing in any manner and at any place, including on social media websites such as, but not limited to, Facebook, that they are authorized to conduct

      fundraising activities on behalf of the Association of Professional Ball Players of America;

3. Soliciting funds, support, or other goods or services in any manner and at any place, including on social media and Internet websites such as Facebook and GoFundMe, on the alleged basis that the goods or services will be used by or for the benefit of the Association of Professional Ball Players of America;

4. Commencing or participating in fundraising activities, including on social media websites such as, but not limited to, Facebook and other Internet forums such as GoFundMe, that are held out in any way to be connected with or for the benefit of the Association of Professional Ball Players of America or its constituents; and

5. Utilizing in any manner and at any place, including on social media websites such as, but not limited to, Facebook, the logos, trademarks, and other intellectual property of the Association of Professional Ball Players of America.

This injunctive relief shall take effect immediately upon on the date of its entry and remain in full force and effect throughout the pendency of the above-captioned case unless and until otherwise terminated or modified by further order of the Court or final disposition of all claims and causes of action before the Court. Defendants shall post security pursuant to Federal Rule of Civil Procedure 65(c) in the amount of $1,000. *See Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996).[18]

    **SO ORDERED** on this **9th day** of **January, 2024**.

                                                  Reed O'Connor
                                             **UNITED STATES DISTRICT JUDGE**

---

[18] Because neither party raises the security requirement in Rule 65(c), the Court determined this amount is appropriate. *See* FED. R. CIV. P. 65(c).